```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEBRASKA
 2

 3     UNITED STATES OF AMERICA,        )     Case No. 4:22CR3154
                                        )
 4                      Plaintiff,      )
                                        )
 5              vs.                     )
                                        )
 6     SCOTT A. BERNDT,                 )
                                        )     Videoconference
 7                      Defendant.      )     April 17, 2023

 8

 9

10                   TRANSCRIPT OF PLEA PROCEEDINGS
                   BEFORE THE HONORABLE CHERYL R. ZWART
11                   UNITED STATES MAGISTRATE JUDGE

12

13                        A-P-P-E-A-R-A-N-C-E-S

14     FOR THE PLAINTIFF:           Mr. John J. Schoettle
                                     Assistant U.S. Attorney
15                                   487 Federal Building
                                     100 Centennial Mall North
16                                   Lincoln, Nebraska 68508

17     FOR THE DEFENDANT:           Mr. Tregg Lunn
                                     Law Office of Tregg Lunn
18                                   830 L Street, Suite 200
                                     Lincoln, Nebraska 68508

19

20

21     TRANSCRIBER:                 Ms. Susan M. DeVetter, RDR, CRR
                                     111 South 18th Plaza, Suite 3130
22                                   Omaha, Nebraska 68102-1322
                                     (402) 661-7309
23

24

       Proceedings recorded by digital recording, transcript produced
25     by certified stenographer.
```

1          (At 2:24 p.m. on April 17, 2023; with counsel and the

2     defendant present:)

3          THE COURT:  We're on the record in Case No.

4     4:22CR3154.  This is the United States of America versus

5     Scott A. Berndt.

6          Counsel, please enter your appearance.

7          MR. SCHOETTLE:  Your Honor, John Schoettle on behalf

8     of the United States government.

9          MR. LUNN:  Good afternoon, Your Honor.  Tregg Lunn

10     for Mr. Berndt, who appears in custody via Zoom from the Saline

11     County Jail.

12          THE COURT:  All right.  Mr. Berndt, you're here today

13     because I've been told that you want to enter a plea of guilty.

14     Is that true?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  I need to explain to you, sir, that I am

17     not your sentencing judge and I'm not the judge who will

18     determine whether your guilty plea is accepted and whether your

19     plea agreement is accepted.  Those matters will be taken up by

20     Judge Gerrard who is your sentencing judge.  But what I can do

21     for you today is gather some information from you and make a

22     recommendation to Judge Gerrard on those issues.

23          Do you agree to proceed before me?

24          THE DEFENDANT:  Yes, ma'am.

25          (The defendant was sworn.)

1       THE COURT:  You are now under oath.  You've sworn to

2   tell the truth, which means if you lie during this proceeding

3   you can be separately prosecuted for the crime of perjury.  Do

4   you understand?

5       THE DEFENDANT:  I do.

6       THE COURT:  At this time I'm going to have the

7   government explain to you again the charge to which you intend

8   to plead guilty and the possible penalty for that charge.

9     Mr. Schoettle.

10     MR. SCHOETTLE:  Mr. Berndt, you're pleading guilty to

11   Count I of the Indictment and that alleges in substance that

12   beginning on or about November 1st, 2020, continuing to on or

13   about December 18th, 2021, in Nebraska, you, along with Louise

14   Gina Polyansky and Rebecca Frankenstein, knowingly and

15   intentionally combined, conspired, confederated, and agreed,

16   together and with other persons, to distribute and possess with

17   the intent to distribute 500 grams or more of a mixture or

18   substance containing methamphetamine.  That's in violation of

19   Title 21, United States Code, Sections 841(a)(1) and (b)(1).

20       It further alleges that before you committed the offense

21   charged, you had a final conviction for a serious drug felony,

22   namely, a conviction for Robbery in violation of Nebraska

23   Revised Statutes Section 28-324 in the District Court for

24   Lancaster County, Nebraska, for which you served more than 12

25   months in prison.

```
1          If convicted, you face a minimum term of imprisonment of

2     15 years up to life.  Following any term of imprisonment,

3     you'll be placed on supervised release for at least ten years

4     and up to life.  You'd have to pay a $100 special assessment,

5     and you could be fined up to $20 million.

6               THE COURT:  Sir, do you understand both the charges

7     and the possible penalties?

8               THE DEFENDANT:  I do.

9               THE COURT:  Having heard that information, again, is

10    it still your intent to plead guilty?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  I have in front of me a Petition to Enter

13    a Plea of Guilty and a Plea Agreement, both of which appear to

14    have been signed by you.  Did you go over these documents with

15    your attorney?

16              THE DEFENDANT:  I did.

17              THE COURT:  Going to the petition, it has several

18    questions and answers in it.  Did you answer each of those

19    questions truthfully?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Were your answers recorded correctly?

22              THE DEFENDANT:  They were.

23              THE COURT:  And after going through the document, did

24    you sign it?

25              THE DEFENDANT:  I did.
```

1          THE COURT:  Going to the Plea Agreement, did you read
2     it?
3          THE DEFENDANT:  Yes, ma'am.
4          THE COURT:  Did your attorney explain it to you?
5          THE DEFENDANT:  He did.
6          THE COURT:  Was there any questions about its meaning
7     that he was unable to answer?
8          THE DEFENDANT:  No -- no.
9          THE COURT:  And after going through the document, did
10    you sign it?
11         THE DEFENDANT:  I did.
12         THE COURT:  When you went over these documents, were
13    you under the influence of drugs or alcohol or having any
14    difficulty thinking?
15         THE DEFENDANT:  No, ma'am.
16         THE COURT:  Are you under the influence of anything
17    right now?
18         THE DEFENDANT:  No, ma'am.
19         THE COURT:  Has anybody threatened you in any way to
20    get you to plead guilty?
21         THE DEFENDANT:  No.
22         THE COURT:  Has anybody promised you anything other
23    than the promises in the Plea Agreement to get you to plead
24    guilty?
25         THE DEFENDANT:  No, ma'am.

```
 1              THE COURT:  Are you having any difficulty hearing,
 2     understanding, and answering my questions?
 3              THE DEFENDANT:  I'm not.
 4              THE COURT:  Do you understand that if the Court
 5     accepts your plea of guilty, you will be found guilty of a
 6     felony?
 7              THE DEFENDANT:  Yes, ma'am.
 8              THE COURT:  Do you understand you have the right to
 9     plead not guilty and make the government try to prove this case
10     at trial?
11              THE DEFENDANT:  I do.
12              THE COURT:  Do you understand you are giving up your
13     trial rights by pleading guilty?
14              THE DEFENDANT:  Yes.
15              THE COURT:  You've been represented in this case by
16     Mr. Lunn.  Is that correct?
17              THE DEFENDANT:  Yes, ma'am.
18              THE COURT:  Do you believe that he has investigated
19     this case sufficiently so that you know what to do today?
20              THE DEFENDANT:  I do.
21              THE COURT:  Are you satisfied with his
22     representation?
23              THE DEFENDANT:  I am.
24              THE COURT:  Do you understand that if you chose to go
25     to trial, you would have the right to counsel representation at
```

1    the trial at no cost to you?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Do you understand you would have a jury

4    trial?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Do you understand that at that trial you

7    would have the right to see and hear the witnesses who testify

8    against you and to have them cross-examined on your behalf?

9            THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  Do you understand you would have the

11   right to call witnesses for you and if they would not come

12   voluntarily you could get a court order, called a subpoena, to

13   make them come and testify?

14           THE DEFENDANT:  I do.

15           THE COURT:  Do you understand that if you chose to go

16   to trial, you could testify yourself if you wanted to or you

17   could stay silent?

18           THE DEFENDANT:  I do.

19           THE COURT:  Do you understand that if you stayed

20   silent at the trial, the jury would not be allowed to consider

21   that silence in deciding whether you were guilty?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And do you understand that if you chose

24   to go to trial, the government would not get a conviction

25   against you unless it was able to prove to every single juror

1    that you are guilty beyond a reasonable doubt?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Are you willing to give up all of those

4    trial rights and plead guilty in this case instead?

5              THE DEFENDANT:  I am.

6              THE COURT:  With a guilty plea, you will have a

7    felony record and with that felony record comes a loss of civil

8    rights.  Those rights include the right to vote, the right to

9    serve in a jury, the right to hold a public office, the right

10   to carry a weapon.  You can also lose federal benefits, but you

11   will lose rights.  Do you understand that?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  And knowing that you will lose civil

14   rights, are you willing to plead guilty?

15             THE DEFENDANT:  I am.

16             THE COURT:  You're looking at a sentence in this case

17   of a minimum of 15 years and up to life in prison; a possible

18   fine of up to $20 million could be imposed in addition to any

19   term of imprisonment; supervised release of at least ten years

20   and up to a lifetime; and a $100 mandatory special assessment.

21   Is that what you're looking at?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Has Mr. Lunn explained the sentencing

24   guidelines to you?

25             THE DEFENDANT:  He has.

1          THE COURT:  Has he explained that those guidelines

2     provide the starting point that Judge Gerrard will look at in

3     determining what your sentence ought to be?

4          THE DEFENDANT:  He did.

5          THE COURT:  Do you understand that Judge Gerrard will

6     consider all of your relevant conduct when determining your

7     sentence?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  For example, he is going to consider such

10     things as how much drugs were involved, whether guns were

11     involved in the distribution of drugs, whether you played a

12     leadership or managerial role in drug distribution, whether

13     guns were involved in the distribution of drugs, any criminal

14     history you may have, and the types of crimes reflected in that

15     history, those types of things.  Do you understand that?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  And once Judge Gerrard considers all of

18     your relevant conduct and makes his findings, he may sentence

19     you within the guidelines you've discussed with your attorney

20     but he may choose not to.  He may go above or below those

21     guidelines based upon his findings.  Do you understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  And once Judge Gerrard determines how

24     much time you'll spend in prison, do you understand you will be

25     required to serve all of that time and the most you can get off

1    that sentence is 54 days per year for good time served and

2    that's only if you earn good time?  Do you understand?

3                 THE DEFENDANT:  I do.

4                 THE COURT:  Now, after you get done serving your time

5    in prison, your sentence will not be over.  You will be

6    required to serve what is called supervised release as part of

7    your sentence.

8         I need to make sure you understand what that is.

9         At the time of sentencing, Judge Gerrard is going to

10   include in your sentencing order a list of rules called

11   conditions of release that you must follow under court

12   supervision for a minimum of ten years after you get out of

13   prison.

14        Do you understand?

15                THE DEFENDANT:  I do.

16                THE COURT:  Do you understand that if you violate

17   those conditions of release, you can be brought back to court

18   and sent back to jail?

19                THE DEFENDANT:  Yes, ma'am.

20                THE COURT:  Do you understand that if you violate the

21   conditions of release by committing another crime, your penalty

22   or sentence on the new crime could be greater than it otherwise

23   would have been merely because you were still serving a

24   sentence in this case when you committed yet another crime?  Do

25   you understand that?

1          THE DEFENDANT:  I do.

2          THE COURT:  You will be required to pay the $100

3    mandatory special assessment.  Were you aware of that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Mr. Schoettle, is there restitution in

6    this case?

7          MR. SCHOETTLE:  No, Your Honor.

8          THE COURT:  I'm sorry, I didn't hear you.

9          MR. SCHOETTLE:  No, Your Honor.

10         THE COURT:  All right.  Sir, you have a plea

11   agreement with the government which outlines your agreement

12   regarding what should happen at the time of sentencing.  Do you

13   understand that this agreement is between you and the

14   government and is not binding on Judge Gerrard?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  At this time I'm going to have the

17   government explain that plea agreement to you.  Please listen

18   as Mr. Schoettle does that.

19      Mr. Schoettle.

20         MR. SCHOETTLE:  These are the key provisions of the

21   plea agreement.

22      Under the plea agreement, Mr. Berndt agrees to plead

23   guilty to Count I of the Indictment, which I've explained

24   earlier.

25      In exchange for that plea of guilty, the United States

1   agrees that he will not be federally prosecuted in the District

2   of Nebraska for any drug trafficking crimes disclosed by the

3   discovery material provided to his attorney as of the date this

4   agreement was signed by all the parties.

5        Agreement not to prosecute him for specific crimes does

6   not prevent any prosecuting authorities from prosecuting him

7   for any other crime, or for any crime involving physical injury

8   or death.

9        The Plea Agreement lists the elements of the offense and a

10   factual basis that the parties agree is true and undisputed.

11        Plea Agreement also lists the penalties and specifies that

12   it's limited to the United States Attorney's Office for the

13   District of Nebraska.

14        The parties have the following sentencing agreements:

15        First, the parties agree that Mr. Berndt should be held

16   responsible, beyond a reasonable doubt, for at least 5

17   kilograms but less than 15 kilograms of methamphetamine

18   mixture.

19        Parties further agree that Mr. Berndt is found to be

20   entitled to an offense level reduction under the guidelines for

21   acceptance of responsibility, United States moves that the

22   Court reduce his offense level by an additional level under the

23   guidelines.

24        Under the agreement, the parties agree that Mr. Berndt may

25   not request or recommend additional downward adjustments,

1   departures, and sentence reductions, and that the United States

2   will oppose any such request.

3        Parties have no agreement concerning Mr. Berndt's criminal

4   history category except that if he's determined to be a career

5   offender, parties agree that he's automatically a criminal

6   history category VI under the guidelines.

7        Parties will recommend that Mr. Berndt be sentenced to the

8   low end of the advisory guideline range calculated by the

9   United States under this agreement.

10        Finally, this agreement contains an appeal waiver and a

11   collateral attack waiver.  Under the appeal waiver, Mr. Berndt

12   knowingly and expressly waives any and all right to appeal his

13   conviction and sentence, unless he's claiming ineffective

14   assistance of counsel.

15        Under the collateral attack waiver, Mr. Berndt knowingly

16   and expressly waives any and all rights to contest his

17   conviction and sentence in any postconviction proceedings,

18   unless he's either timely challenging his conviction and

19   sentence should the Eighth Circuit or the Supreme Court later

20   find that the charge he's agreeing to plead guilty to fails to

21   state a crime, or if he's seeking postconviction relief based

22   on ineffective assistance of counsel.

23        Those are the key provisions of the plea agreement,

24   Your Honor.

25             THE COURT:  Mr. Lunn, do you agree?

```
 1              MR. LUNN:  I do, Your Honor.

 2              THE COURT:  Mr. Berndt, did you listen as the

 3    government described the plea agreement?

 4              THE DEFENDANT:  Yes, ma'am.

 5              THE COURT:  Did that description match your

 6    understanding of your agreement with the government?

 7              THE DEFENDANT:  Yes, it did.

 8              THE COURT:  Under the terms of the plea agreement,

 9    you're giving up your right to appeal and to collateral attack

10    with certain exceptions.  I need to make sure you understand

11    what you're giving up.  Everything that's done by this Court is

12    subject to being looked at by another court to make sure it was

13    done right.  The process is called an appeal and the Court that

14    looks at it is the Eighth Circuit Court of Appeals.

15        Do you understand?

16              THE DEFENDANT:  Yes, ma'am.

17              THE COURT:  Under the terms of this plea agreement,

18    you're giving up your right to that appeal process with two

19    exceptions.  You can claim that Mr. Lunn provided you with

20    ineffective assistance of counsel and you can request

21    compassionate release and appeal the denial of any such

22    request; but in all other respects, you are giving up your

23    right to appeal.

24        Do you understand?

25              THE DEFENDANT:  I do.
```

1        THE COURT:  Collateral attack is different than an

2    appeal.  It's a proceeding that you can file after all of the

3    appeal process is over and you can allege in that proceeding

4    that your constitutional rights were violated.

5        Do you understand?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Under the terms of this plea agreement,

8    you're giving up your right to that type of proceeding as well,

9    again, with two exceptions.  You can claim you had ineffective

10   assistance of counsel and you can claim that what you're

11   admitting to here today is not a crime.  But in all other

12   respects, you are giving up your right to collateral attack.

13       Do you understand?

14       THE DEFENDANT:  I do.

15       THE COURT:  Do you understand that your waiver of

16   appeal and your waiver of collateral attack apply both to your

17   conviction and to the sentence you have not yet received?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Have you talked to your attorney about

20   your appeal rights and your collateral attack rights?

21       THE DEFENDANT:  Yeah, we have.

22       THE COURT:  After having those discussions and

23   considering your options, have you decided to give up your

24   right to appeal and to collateral attack with the exceptions

25   listed in the plea agreement?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Has anybody made any promises to you that

3     are not in the written plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you understand there is no guarantee

6     your sentence will be less because you pled guilty instead of

7     being found guilty by a jury?

8          THE DEFENDANT:  I do.

9          THE COURT:  At this time I'm going to have

10    Mr. Schoettle explain the key facts the government would

11    present at trial if this case went to trial.  Please listen as

12    he does that.

13      Mr. Schoettle.

14      MR. SCHOETTLE:  Yes.  The government anticipates

15    presenting evidence of the following facts:

16      Starting around November 2020, Scott A. Berndt agreed and

17    worked with several others to obtain and distribute

18    methamphetamine in the Lincoln, Nebraska, area.

19      In about November of that year until May 2021, Berndt and

20    others received packages by mail containing pound to multipound

21    quantities of methamphetamine that had been shipped to a couple

22    different locations in Lincoln.

23      U.S. postal records show during this time period over ten

24    suspected drug packages weighing between 1.69 pounds to over 11

25    pounds being delivered to these addresses from the November to

1    May 2021 time period.

2         During that time period and after, Mr. Berndt and others

3    distributed methamphetamine to others in the Lincoln area in

4    quantities ranging from a half ounce to a quarter pound at a

5    time.

6         According to money transfer records, on at least a few

7    occasions during this time period, Mr. Berndt sent the proceeds

8    from distributing that methamphetamine by wire to individuals

9    in Arizona.

10        And all these events happened in Nebraska.

11        Government further anticipates presenting evidence that

12   before November 1st of 2020, Mr. Berndt had a final conviction

13   for a serious violent felony, a conviction for robbery in

14   violation of Nebraska law in the District Court for Lancaster

15   County, Nebraska, and he served more than 12 months in prison

16   for that offense.

17             THE COURT:  All right.  Mr. Lunn, do you believe that

18   if this case went to trial that evidence would go before a

19   jury?

20             MR. LUNN:  I do believe that, Your Honor.

21             THE COURT:  All right.  Mr. Berndt, did you listen as

22   the government described the evidence against you?

23             THE DEFENDANT:  I did.

24             THE COURT:  Is everything that Mr. Schoettle said the

25   truth?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Between November of 2020 and December of

3     2021, were you in Nebraska?

4          THE DEFENDANT:  I was.

5          THE COURT:  Were you, along with others, buying and

6     selling methamphetamine?

7          THE DEFENDANT:  I did.

8          THE COURT:  Were you working along with Louise Jean

9     Polyansky and Rebecca Frankenstein?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Were you buying and selling over a period

12     of time?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Over that period of time, do you agree

15     that you distributed and possessed with the intent to

16     distribute 500 grams or more of a mixture or substance

17     containing a detectable amount of methamphetamine?

18          THE DEFENDANT:  I do.

19          THE COURT:  Did you know that what you were buying

20     and selling was, in fact, methamphetamine?

21          THE DEFENDANT:  I do -- I did.

22          THE COURT:  Prior to November 1st of 2020, had you

23     been convicted of a serious violent felony, specifically,

24     Robbery?

25          THE DEFENDANT:  Yes, ma'am.

1        THE COURT:  Did you serve a term of imprisonment of

2  12 months or more for that crime?

3        THE DEFENDANT:  I did.

4        THE COURT:  Were you released from that imprisonment

5  less than 15 years prior to November 1st of 2020?

6        THE DEFENDANT:  No.  I was released in 1997.

7        THE COURT:  Okay, hang on a second.

8      So it doesn't in this one -- okay, Mr. Schoettle, in this

9  one he doesn't -- it just is any violent felony, irrespective

10  of the time frame?

11        MR. SCHOETTLE:  That's correct, Your Honor.

12        THE COURT:  Okay.

13        MR. SCHOETTLE:  So there are -- under the statute,

14  there are two possible categories of felonies that could serve

15  as a 851.  The first is a serious drug felony, which requires

16  that the defendant serve more than 12 months in prison and be

17  released within 15 years.

18        THE COURT:  Got it.

19        MR. SCHOETTLE:  The other option is a serious violent

20  felony, which applies in this case.

21        THE COURT:  Got it.  All right.

22        MR. LUNN:  Your Honor, we --

23        THE COURT:  Go ahead.

24        MR. LUNN:  Mr. Berndt and I talked specifically about

25  this.

```
 1              THE COURT:  All right.  Any further questions I need
 2     to ask, Mr. Schoettle?
 3              MR. SCHOETTLE:  No, Your Honor.
 4              THE COURT:  Mr. Lunn?
 5              MR. LUNN:  No, Your Honor.  Thank you.
 6              THE COURT:  Mr. Schoettle, do you believe the guilty
 7     plea is knowing, intelligent, and voluntary, and that there is
 8     a factual basis for it?
 9              MR. SCHOETTLE:  I do, Your Honor.
10              THE COURT:  Mr. Lunn, do you agree?
11              MR. LUNN:  I do.
12              THE COURT:  Mr. Berndt, do you want the Court to
13     accept your plea of guilty?
14              THE DEFENDANT:  Yes, ma'am.
15              THE COURT:  Do you have any questions of me before I
16     proceed?
17              THE DEFENDANT:  I do not.
18              THE COURT:  You have been charged in the Indictment
19     which alleges that beginning on or about November 1st of 2020
20     and continuing to on or about December 18th of 2021, while in
21     Nebraska, you along with others did knowingly and intentionally
22     combine, conspire, confederate, and agree with other persons to
23     distribute and possess with the intent to distribute 500 grams
24     of a mixture or substance containing a detectable amount of
25     methamphetamine, and that you did so after being previously
```

1  convicted of a serious violent felony, specifically, Robbery,

2  for which you served 12 months of imprisonment or more.  What

3  do you plead?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  I do find that your guilty plea is

6  knowing, intelligent, and voluntary and that there is a factual

7  basis for it.

8      I will recommend to Judge Gerrard that he accept your plea

9  of guilty and your plea agreement.  He'll take up the issue of

10  your plea agreement at sentencing on July 21st at 9:30.

11      Does that work for everyone?

12          MR. SCHOETTLE:  That should work.

13          MR. LUNN:  Yes, Your Honor.

14          THE COURT:  All right.  Anything else we need to take

15  up at this time?

16          MR. SCHOETTLE:  No, Your Honor.

17          MR. LUNN:  No, thank you.

18          THE COURT:  All right.  We are in recess.

19      (Recess at 2:45 p.m.)

20                          *  *  *

21                  C-E-R-T-I-F-I-C-A-T-I-O-N

22      I, Susan M. DeVetter, RDR, CRR, certify that the foregoing
is a correct transcript to the best of my ability from the
23  digital recording of the proceedings held in the above-entitled
matter.
24      _/s/ Susan M. DeVetter_          ___May 3, 2023___
                Transcriber                      Date
25